**This order is SIGNED.**

**Dated: August 7, 2026**



**PEGGY HUNT**
**U.S. Bankruptcy Judge**

*aep*

---

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 25-27834 |
| Motos America, Inc., | Chapter 11 |
| Debtor. | Honorable Peggy Hunt |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER
GRANTING IN PART AND DENYING IN PART DEBTOR'S SECOND MOTION FOR
ORDER AUTHORIZING USE OF CASH COLLATERAL**

An evidentiary hearing was held on August 4, 2026 on *Debtor's Second Motion for
Order Authorizing Use of Cash Collateral* [Dkt. No. 126] (the "**Motion**"). Appearances were as
noted on the record. The Court received the testimony of Douglas Brown, the Debtor's Chief
Restructuring Officer, and heard the representations and arguments of counsel.

Based on the Motion; the evidence received; the representations and arguments of the
parties; the Court's independent review of the record, including findings of fact and conclusions
of law made on the record at a hearing held on April 7, 2026 as discussed herein, and which are
incorporated herein; and good cause appearing, the Court enters the following findings of fact and
conclusions of law:[1]

---

[1] *See* Fed. R. Civ. P 52(a)(1) made applicable in this Proceeding by Fed. R. Bankr. P. 7052. Findings of fact are
deemed, to the extent appropriate, to be conclusions of law and conclusions of law are similarly deemed to be
findings of fact and shall be equally binding as both.

## I.  JURISDICTION AND VENUE

1.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's Order of Reference at DUCivR 83-7.1.

2.      Pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b), the Court may hear and determine this matter because it arises under title 11 of the United States Code (the "**Bankruptcy Code**"), arises in or is related to the above-captioned bankruptcy case (the "**Bankruptcy Case**"), and is included as a "core proceeding" in 28 U.S.C. § 157(b)(2)(M).

3.      Venue of the Bankruptcy Case and this Proceeding is proper in this district pursuant to 28 U.S.C. § 1408.

## II.  FINDINGS OF FACT

### The First Motion

4.      The Debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code on December 31, 2025, thus commencing the Bankruptcy Case.

5.      It was not until March 3, 2026, that the Debtor filed a *Motion for Order Authorizing Use of Cash Collateral* [Dkt. No. 89] (the "**First Motion**"). Relevant to the present matter is that the Debtor sought (i) authorization to use cash collateral for the period January 1, 2026 through June 30, 2026, (ii) *nunc pro tunc* approval of its unauthorized use of cash collateral, and (iii) approval of a procedure whereby the Debtor could continue to use cash collateral after June 30th without the filing of a motion, but rather by filing and serving an amended budget that would be deemed approved if there were no objections filed within ten days (the "**No Motion Procedure**").

6. The Debtor identified two creditors as potentially having an interest in the Debtor's cash collateral (the "**Secured Creditors**").[2] There is no record that the Secured Creditors consent to the Debtor's use of cash collateral.

7. The Debtor's unauthorized use of cash collateral was discussed at several hearings, and during each of these exchanges the Court expressed its concerns about the Debtor's apparent failure to appreciate that its actions were not in compliance with 11 U.S.C. § 363(c) and that it had violated bankruptcy law.

8. After receiving evidence at the hearing on the First Motion, the Court made findings of fact and conclusions of law on the record, stating among other things that –

a. If cash collateral is used without prior Court authorization and retroactive approval is sought such relief is appropriate only in "extraordinary circumstances" and that simple neglect is not enough;

b. The retroactive approval sought was a "highly improper request" and the Debtor "must never again find itself in the position of having to seek retroactive relief from this Court;"

c. Despite the Debtor's failure to follow the law, the Court would grant the Motion because, among other things, there was no objection, no evidence of bad faith, and the Court wanted to give the Debtor a chance to reorganize;

d. Future motions seeking authority to use cash collateral should be timely filed and served allowing sufficient time to obtain authority prior to the expiration of the

---

[2] First Motion, ¶ 8; *see* Motion, ¶ 10. The Debtor argues the Secured Creditors may not have enforceable interests in the Debtor's cash. *See* First Motion, ¶¶ 9 – 15 and Motion, ¶¶ 11 – 15. Referencing these arguments Debtor's counsel has suggested numerous times that the whole exercise of approval of the use of cash collateral is a waste of time and that the Debtor's failure to follow the law is not of any consequence. Yet, the Secured Creditors have filed Proofs of Claim asserting secured claims; *see* Claims Dkt. Nos. 66-1, 67-1; and, although reserving its right to do so, the Debtor has taken no actions necessary to obtain a determination as to the validity or enforceability of the Secured Creditors' interests. *See* First Motion, ¶¶ 18 – 19; Motion, ¶¶ 12, 20. Counsel's continued suggestions about the futility of the process, therefore, is without merit and evidences his disregard of the importance of clear provisions of the Bankruptcy Code and the integrity of the system.

approved budget; and

     e.     The First Motion was denied as to the No Motion Procedure because it did not comply with the law.

9. The First Order authorized the Debtor's prior and future use of cash collateral pursuant to a budget that ended on June 30, 2026 (the "**First Budget**"), stating that (i) the Debtor was required to file a motion for use of cash collateral prior to the end of June, and (ii) the Court would not entertain a motion for use of cash collateral on shortened time.

10. The First Budget shows, among other things, that the Debtor was authorized to use up to $83,400 monthly for payroll.

**The Present Motion**

11. The Debtor filed the present Motion on June 30, 2026, the day the First Budget expired.

12. A *Notice of Hearing* related to the Motion [Dkt. No. 127] (the "**Notice**") was properly filed and served.[3]

13. The Motion requests (i) approval of its use of cash collateral for the period of July 1, 2026 through December 31, 2026 (the "**Relevant Period**") pursuant to a budget attached as part of Exhibit B to the Motion (the "**Present Budget**"), (ii) *nunc pro tunc* approval of the Debtor's use of cash during the period of July 1, 2026 through the entry of an order granting the Motion, (iii) approval of the No Motion Procedure previously rejected by the Court, and (iv) granting the Secured Creditors replacement liens in cash collateral.

---

[3] The *Certificate of Service* attached to the Motion and the Notice was not in compliance with this Court's Local Rules because it did not attach a date-stamped mailing matrix. Debtor's counsel's representations on the record establish that notice was proper. The Court instructed counsel to file an Amended Certificate of Service by August 5, 2026. The amended *Certificate of Service* now filed suffers from the same deficiencies as the original ones. *See* Dkt. No. 130.

14. The Debtor acknowledges in the Motion that "extraordinary circumstances" are necessary for *nunc pro tunc* approval of a debtor's use of cash collateral, but states no extraordinary circumstances. In direct contradiction with the record, the Debtor represents that retroactive approval is appropriate because the Court retroactively approved the Debtor's unauthorized use of cash collateral in conjunction with the First Motion.

15. The Present Budget represents, among other things, that the Debtor's monthly payroll for the Relevant Period is $79,000.

16. The Motion, which included the Present Budget, was served on all parties in interest, including the Secured Creditors.

**Use of Cash During the Unauthorized Period**

17. The Debtor used cash collateral without Court approval from July 1 through August 3, 2026 (the "**Unauthorized Period**") — the day the Court held a hearing on the Motion.

18. The testimony of Mr. Brown establishes that cash used for payroll during the Unauthorized Period exceeded the $79,000 stated in the Present Budget.

19. This fact was not disclosed by Debtor's counsel in presenting the Motion to the Court.

20. Rather, Mr. Brown testified on cross examination that (i) the Debtor's payroll in July was "in the high 80s, close to 90" thousand dollars, (ii) the $83,400 in the First Budget was more consistent with what the Debtor had been paying, and (iii) the $79,000 was a projection based on an anticipated reduction in staff, which did not happen as quickly as anticipated.

21. Mr. Brown's testimony was vague, seemingly inconsistent, and calls into question whether payroll during any period since the petition date in fact was consistent with the First Budget or the Present Budget.

**Retroactive Approval Issues**

22.     The Debtor did not give any explanation or present any evidence as to why it had not sought approval to use cash collateral prior to the expiration of the First Budget, much less extraordinary circumstances that would merit retroactive approval.

23.     Debtor's counsel's statements that the requests made in the Motion were consistent with the First Order are incorrect.

24.     The Debtor's request for *nunc pro tunc* approval of its use of cash collateral during the Unauthorized Period violates this Court's findings of fact and conclusions of law made on the record at the hearing on the First Motion and incorporated in the First Order.

25.     The Debtor violated the First Order because it did not file the present Motion with sufficient time to obtain an order (without shortening time) prior to the end of June.

**Other Relevant Facts**

26.     The Secured Creditors received notice of the Motion and did not object to the relief sought.

27.     The Present Budget states that payroll for the months of August and September 2026 is $79,000, but as of the hearing the Debtor had not yet reduced its workforce.

28.     Mr. Brown's testimony established that the Present Budget is not accurate.

29.     The Debtor's unauthorized use of cash collateral is not its only violation of bankruptcy law. It paid prepetition wages without obtaining Court approval and then sought authorization after the fact without any explanation of why it had violated the law. The Court made clear to the Debtor that its actions violated bankruptcy law but ultimately (almost five

months after the petition date) approved the wage payments because, among other things, the

Court was concerned about requiring employees to return earned wages.[4]

30.     Furthermore, this is not the first time Debtor's counsel has ignored bankruptcy

law in a Chapter 11 case.[5]

31.     Despite concerns stated on the record about the Debtor's apparent violation of the

law and the delay to creditors, no party in interest has filed a motion requesting relief from this

Court, and the Debtor represents it will file a plan of reorganization in the near future that will

pay creditors 100 percent of their claims.

## III.  CONCLUSIONS OF LAW

32.     Section 363(c)(2) of the Bankruptcy Code states that the Debtor "may not use, sell

or lease cash collateral . . . unless -- (A) each entity that has an interest in such cash collateral

consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in

accordance with the provisions of this section."

33.     Subsection (2)(A) of Section 363(c) does not apply in this case.

34.     Thus, under subsection (2)(B), the Debtor was required to obtain Court approval

of its use of cash collateral after notice and a hearing.

35.     Courts approve the use of cash collateral if the Debtor establishes that each

purportedly secured creditor's interest is adequately protected.[6] Typical adequate protection

measures include cash payments, additional or replacement liens, and/or allowance of an

administrative expense or other relief.[7]

---

[4] *See* Dkt. Nos. 53 (Motion filed Jan. 26, 2026), 81 (Order Denying Motion Without Prejudice due to insufficient notice and ordering that a motion be filed by no later than March 4, 2026); 86 (new Motion filed on March 4, 2026), 87 (Notice of Hearing), 98 (Declaration in Support of Motion), 96 (Objection), 114 (Order entered April 24, 2026).
[5] *See In re iRecertify, LLC*, Case No. 24-25156 (Bankr. D. Utah).
[6] *See* 3 Collier on Bankruptcy ¶ 363.03 (16th ed. 2026) ("In the absence of the creditor's consent, the trustee may use cash collateral only with the approval of the court, which requires adequate protection of the adverse interest.").
[7] *See* 11 U.S.C. § 361.

**A.      The Motion is Denied to the Extent it Seeks Retroactive Approval of the Debtor's Use of Cash Collateral During the Unauthorized Period.**

36.      The Debtor did not comply with § 363(c)(2)(B) to the extent it used cash collateral without Court approval during the Unauthorized Period.

37.      The Debtor requests that the Court approve its unauthorized use of cash collateral *nunc pro tunc*.

38.      Such relief is not available. In *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*,[8] the United States Supreme Court stated:

> Federal courts may issue *nunc pro tunc* orders, or "now for then" orders, to "reflect[] the reality" of what has already occurred. "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court."

> Put colorfully, "[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact." Put plainly, the court "cannot make the record what it is not."[9]

39.      Here, as stated in *Roman Catholic Archdiocese*, the Cout cannot make the record what it is not. The Debtor did not timely obtain approval of its use of cash collateral and the Court cannot turn back time to make the record what it is not.

40.      Furthermore, even if *nunc pro tunc* or retroactive relief were allowed, the Debtor has not met its burden of showing that such relief is appropriate under the law binding on this Court on which it relies requiring a showing of "extraordinary circumstances."[10]

41.      The Debtor has presented no evidence of extraordinary circumstances – and has not even attempted to provide an explanation for its failure to obtain Court approval prior to using cash collateral. It maintains that its request for retroactive approval is justified because the Court allowed retroactive approval by entering the First Order.[11] This argument completely

---

[8] 589 U.S. 57 (2020) (citations omitted).
[9] *Id.*, p. 65.
[10] *In re Land,* 943 F.2d 1265, 1267 – 68 (10th Cir. 1991) (citation omitted) (cited in Motion, p. 8).
[11] Motion, p. 9.

ignores the Court's rulings and the First Order as discussed above and does not establish

extraordinary circumstances.

42.     Accordingly, the Motion is denied to the extent the Debtor seeks retroactive

approval of its use of cash collateral during the Unauthorized Period.

**B.     The Motion is Granted to the Extent it Seeks Approval of the Use of Cash Collateral for the Period of August 4, 2026 Through September 10, 2026 Pursuant to the Present Budget and Denied Without Prejudice for the Period After September 10, 2026.**

43.     Neither the Secured Creditors nor any other party in interest has objected to the

Motion.

44.     Further, the Secured Creditors have not objected to the Debtor's offer of adequate

protection and, therefore the Court concludes that they are adequately protected and shall be

afforded the protections set forth in ¶ 19 of the Motion, including replacement liens in the

Debtor's "post-petition cash, accounts receivable, and the proceeds of each of the foregoing, to

the same extent and priority as any duly perfected and unavoidable lien in cash collateral held by

the alleged Secured Creditor as of the Petition Date."

45.     The Present Budget, however, is not accurate and the amounts budgeted may

exceed the costs disclosed in the Present Budget. Thus, a new motion must be filed and served in

accordance with the Order entered concurrently herewith requesting approval of the use of cash

collateral for the period after September 10, 2026 pursuant to an accurate budget.

46.     In the interim, the Court grants the Motion in part and the Debtor is authorized to

use cash collateral ***pursuant to the Present Budget*** through September 10, 2026. Thus, until

September 10, 2026, the Debtor is only authorized to use cash collateral as limited by the Present

Budget, including in making payroll. For wages earned from July 1 through September 10, 2026,

the Debtor may only use up to $79,000 in cash collateral. If the Debtor incurs wage obligations as a result, it must include those wages in its new budget and provide for them accordingly.

47.     The Secured Creditors are entitled to replacement liens in the Debtor's cash collateral for all cash collateral obtained by the Debtor in the past or future through September 10, 2026, including that obtained during the Unauthorized Period.

48.     The Motion is denied in part without prejudice to the extent it seeks authority to use cash collateral after September 10, 2026.

**C.     The Motion is Denied With Prejudice to the Extent it Seeks Approval of the No Motion Procedure.**

49.     The Motion is denied with prejudice to the extent it seeks approval of the No Motion Procedure.

50.     As stated by the Court in conjunction with the First Motion, the No Motion Procedure is not appropriate, and the Debtor has not stated any legal basis that would support it.

51.     The Debtor should not seek approval of the No Motion Procedure in any future motion, unless it provides a legal basis for it.

**IV.   CONCLUSION**

52.      For the reasons stated, the Court concludes (i) the Motion is denied with prejudice as to the request for approval of use of cash collateral during the Unauthorized Period, (ii) the Motion is granted in part and use of cash collateral from August 4 through September 10, 2026 pursuant and limited to the Present Budget is authorized, (iii) the Motion is denied without prejudice as to the use of cash collateral after September 10, 2026, (iv) the Secured Creditors are afforded replacement liens on all cash collateral of the Debtor for the period of July 1 through September 10, 2026, and (v) the Motion is denied with prejudice to the extent it seeks approval of the No Motion Procedure.

53.     The Debtor's repeated violation of the Bankruptcy Code and this Court's orders is concerning and these violations, along with ***any future violation (including use of cash collateral that does not conform to the Present Budget)*** may warrant appropriate sanctions or other relief if requested by any party in interest.

54.     **The Court gives the Debtor and its counsel notice that absent a request by a party in interest the Court may issue an *Order to Show Cause* as to why it should not appoint a Chapter 11 trustee under § 1104 of the Bankruptcy Code, convert this case to Chapter 7 under § 1112 Bankruptcy Code, and/or impose appropriate sanctions.**

55.     The Court will enter a separate Order concurrently herewith.

--END OF DOCUMENT--

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing *Findings of Fact and Conclusions of Law* shall be served on the parties in the manner designated below:

**By Electronic Service**: The parties of record in this case, as identified below, are registered CM/ECF users.

- **Megan K Baker**    baker.megan@dorsey.com, gordon.rebecca@dorsey.com
- **Kevin M. Bischoff**    kevin@snjlegal.com, secretary@snjlegal.com,natalia@snjlegal.com,clara-lois@snjlegal.com
- **Matthew James Burne**    matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov ;Brittany.Dewitt@usdoj.gov
- **Brittani Bushman**    brittani@snjblaw.com, deanna@snjblaw.com;Bushman.BrittaniB140657@notify.bestcase.com
- **T. Edward Cundick**    tcundick@wnlaw.com, tcundick-secy@wnlaw.com;orders@wnlaw.com
- **Bret R Evans**    brevans@swlaw.com, jritchie@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com
- **Nicholas Hagen**    nhagen@rqn.com, ecasaday@rqn.com;docket@rqn.com
- **Michael R. Johnson**    mjohnson@rqn.com, docket@rqn.com;ecasaday@rqn.com;RQN@ecfalerts.com
- **Peter J. Kuhn**    Peter.J.Kuhn@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov ;Brittany.Dewitt@usdoj.gov
- **Tait Meskey**    tmeskey@swlaw.com, jritchie@swlaw.com,awayne@swlaw.com,docket_slc@swlaw.com
- **Darren B. Neilson**    dneilson@parsonsbehle.com, ecf@parsonsbehle.com
- **Alexandra Trombitas**    atrombitas@rqn.com, jsears@rqn.com,docket@rqn.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Russell S. Walker**    russellw@pearsonbutler.com, sasha@pearsonbutler.com
- **Steven T. Waterman**    waterman.steven@dorsey.com, gordon.rebecca@dorsey.com,steven-waterman-9367@ecf.pacerpro.com

**By U.S. Mail**: In addition to the parties receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

*None.*